**Brett A. Greenfield (SBN 217343)**
21031 Ventura Blvd, Suite 1101
Woodland Hills, CA. 91364
(818) 724-7272 (voice)
(818) 806-4110 (facsimile)
Brett@818LawGroup.com

*Attorneys for Defendant Mark Roy Anderson*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK ROY ANDERSON,<br><br>Defendant. | Case No. 2:23-mj-2298<br><br>**MARK ANDERSON'S RESPONSE TO GOVERNMENT'S REQUEST FOR DETENTION; MEMORANDUM; DECLARATION OF MEGAN ANDERSON**<br><br>[U.S. CONST. AMEND. VIII; 18 USC § 3141, *ET SEQ*.]<br><br>DATE: May 17, 2023<br>TIME: 3:00 p.m.<br>The Honorable Charles F. Eick Presiding |
|---|---|

COMES NOW DEFENDANT MARK ROY ANDERSON, by and through counsel of record, Brett Greenfield, and hereby responds to the Government's request that he be detained pending trial. This document is based on the attached Memorandum and Declaration of Mr. Anderson's daughter, Megan Anderson, all the files and records in this case as well as any argument or evidence received by the Court during tomorrow's May 17, 2023, Detention Hearing.

BRETT GREENFIELD, ESQ.
TARZANA, CALIFORNIA

Respectfully submitted,

Dated: May 16, 2023                                818 Law Group, LLP
                                                   /s/ Brett A. Greenfield
                                                   21031 Ventura Blvd,
                                                   Suite 1101
                                                   Woodland Hills, CA. 91364
                                                   (818) 724-7272 (voice)
                                                   (818) 806-4110 (facsimile)
                                                   Brett@818LawGroup.com

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## INTRODUCTION

In this case, the Government is requesting Mr. Anderson's detention despite there being, according to the Bail Reform Act, *no presumptions involved*. The Government argues that Mr. Anderson should be detained due to concerns about flight and potential danger. However, considering the significance that the Federal Constitution and relevant legal precedents place on individual liberty, and recognizing that the Honorable Court has the ability to impose suitable conditions, Mr. Anderson would respectfully urge the denial of the Government's request, and that, he be released pending trial.

## II

## RELEVANT POINTS AND AUTHORITIES

Pretrial release and bail-related decisions in federal court are governed by the Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq*. Federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail. *Stack v. Boyle*, 342 U.S. 1, 4 (1951); *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972). Consistent with this understanding, the Bail Reform Act provides that persons facing trial are to be released under the least restrictive condition or combination of conditions that will "reasonably assure" the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(c)(2); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).

"Only in rare circumstances should release pending trial be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *Gebro*, 948 F.2d at 1121. The Bail Reform Act "codifies the longstanding norm in our justice system that bail is the rule, and that few cases are to be exceptions." *United States v. Speed Joyeros, S.A.*, 204 F. Supp. 2d 412, 434 (E.D.N.Y. 2002) At the same time, the Act also counsels that a district court may not order pretrial release unless it determines that a "condition or combination of conditions will reasonably assure the appearance of the

person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).[1]

In determining which of the four release options should apply, Courts are guided by § 3142(g), which lists the factors that the judicial officer should consider. They include: (1) release on one's own recognizance; (2) release on conditions (including posting cash, property, or personal surety bonds); (3) temporary detention; and (4) detention pending trial. See generally 18 U.S.C. § 3142(a)(1)–(4).

*In this non-presumption case*, the Court's default position is release, and the Bail Reform Act therefore imposes on the government the heavy burden of establishing "by a clear preponderance of the evidence" that "no condition or combination of conditions will reasonably assure [Mr. Anderson's] appearance" in order to justify detention. Motamedi, supra, at 1406-07 (9th Cir. 1985); *id*. at 1405 ("[F]ederal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail."); *accord* 18 U.S.C. § 3142 (a), (c); *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."); *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) ("The government's burden of proof is not trivial.").

In determining whether the government has met its hefty burden, the Court is required to consider:

(1) "the nature and circumstances of the offense charged, including whether" the offense is, inter alia, a crime of violence or involves a controlled substance;

(2) "the weight of the evidence against the person";

(3) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to

---

[1] Even though this is a non-presumption case, Mr. Anderson mentions here the burdens of proof attendant to such matters. When the Government seeks detention based on risk of flight, the preponderance of evidence standard applies. *Motamedi*, 767 F.2d at 1406–07. But when the government claims dangerousness, the standard of proof is clear and convincing evidence. *Id*.; *see also United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990).

drug or alcohol abuse, criminal history, [] record concerning appearance at court proceedings," and "whether, at the time of the current offense or arrest, the person was on probation, on parole, or other release pending" further criminal proceedings; and

(4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g)(1)-(4).

"[T]he weight of the evidence is the least important" of these factors, and "the [Bail Reform Act] neither requires nor permits a pretrial determination of guilt." *Gebro*, *supra*, at 1121 (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)); *see also United States v. Gray*, 651 F. Supp. 432, 436 (W.D. Ark. 1987) (noting that to presume risk of flight from strong evidence of guilt would be "tantamount to a presumption of guilt"). On review, the "district court is to make its own 'de novo' determination of facts," and "the ultimate propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." *United States v. Koenig*, 912 F.2d at 1190, 1193 (9th Cir. 1990).[2]

In the context of pretrial detention, a judicial officer must order the defendant released unless he finds that such release "will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Thus, if the Honorable Court determines that release on pre-trial recognizance or unsecured appearance bond will not reasonably ensure Mr. Anderson's appearance or will endanger the safety of any other person or the community, the Court should order his pre-trial release subject to a condition that he not commit a crime while released and subject to the least restrictive condition or combination of conditions that will reasonably ensure defendant's appearance and the safety of any other person and the community. 18 U.S.C. § 3142(c)(1)(B). Only on clear and convincing

---

[2] "The judicial officer must also consider such factors as the defendant's character, physical and mental condition, family ties, past conduct, and the nature and seriousness of the danger to any person or the community if the person is released. The judicial officer may not impose a financial condition that results in pretrial detention." 2 CRIMINAL CONSTITUTIONAL LAW § 7.02, "Factors in Decision to Detain or Release," (Lexis-Nexis 2022 & Supp.) (collecting cases.)

evidence may the magistrate judge find that no condition or combination of conditions will reasonably assure the safety of others and the community. 18 U.S.C. § 3142(f).

The standard for ensuring appearance is reasonable likelihood--not a guarantee--of appearance. 18 U.S.C. § 3142(b)--(c); *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). In assessing conditions to reasonably assure appearance, the Court may consider the nature and circumstances of the offense charged; the weight of the evidence against the defendant; and the history and characteristics of the defendant, which includes the person's character, physical and mental condition, family ties, employment, financial resources, residential ties, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings.[3] *Id*. § 3142(g)(1)-(3). In a "close case," the Court must grant pretrial release, as doubts about the propriety of release must be resolved in favor of the defendant. *Motamedi*, *supra*, 767 F.2d at 1406.[4]

///

///

///

///

///

---

[3] Mr. Anderson's reliability and availability during his previous case strongly supports releasing him on bail. *See United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986) (potential recidivism involving use of fraudulent identification not type of danger that supports detention order; "[A] defendant's prior record of appearing in court as required when released prior to trial is a factor in favor of [the defendant's] release. . . .") "[I]t is only a limited group of offenders who should be denied bail pending trial." *United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) (internal quotation marks omitted). Crimes of deceit, even serious ones, do not suggest a flight risk. *See Himler*, 797 F.2d at 161 (holding there is "no per se presumption of flight where the crime charged involves the production of fraudulent identification"); *see also United States v. Slack*, No. 99-cr-138, 2000 WL 1206659, at *2 (S.D. Ind. Aug. 17, 2000) *("[C]harges of wire fraud do not weigh heavily in favor of detention."* (emphasis added.).)

[4] Proving that someone poses a "serious" risk of flight is no easy task. A "serious" risk of flight exists, for example, when someone holds and uses foreign passports and tells others they intend to flee. *See, e.g., United States v. Cole*, 715 F. Supp. 677, 679 (E.D. Pa. 1988); *see also United States v. Szilagyi*, No. CR-13-0116-PHX-DGC, 2016 WL 795829, at *4-5 (D. Ariz. Mar. 1, 2016) (detaining defendant who fled the United States after learning she was under investigation and obtained a Hungarian passport, the whereabouts of which were unknown).

BRETT GREENFIELD, ESQ.
TARZANA, CALIFORNIA

## III

## OFFERS OF PROOF AND DISCUSSION

Undersigned counsel, along with potential witnesses under oath, can and will present, *inter alia*, the following:

1. The family and friends of Mr. Anderson are willing to provide approximately $400,000 in appearance bonds, including a pledge of $200,000 from his daughter Megan. This amount represents a significant portion of her annual salary at Google. (Please refer to the attached Declaration of Megan Anderson, which is a true and accurate copy.)

2. Referring to Ms. Anderson's attached declaration once again, it is important to note that no evidence has been presented to the Honorable Court regarding Mr. Anderson's strong relationships with all five of his children. These relationships strongly refute the Government's unsubstantiated claims that Mr. Anderson is a flight risk or a danger to the community.

3. Mr. Anderson has not utilized a passport for several years, and he has submitted a declaration to the Court stating that he is unable to locate it.

4. Agent Higgins' Criminal Complaint fails to include crucial details that would support the argument that this matter should be handled in civil court. The transactions and agreements in question involved the participation of legal professionals along the way, and there are several individuals who were not interviewed but could provide evidence favorable to Mr. Anderson's defense.

In all honesty, the current situation seems more appropriate for civil litigation, but regardless, Mr. Anderson asks to be released until his trial. In this regard, he will discuss below the stances of Pretrial Services and the Government. They assert that, in a non-presumption case, Mr. Anderson poses both a threat to the community and a risk of fleeing. It is worth noting that the Government has not presented any evidence to support its position, presumably relying on the opportunity to proffer evidence to the Court.

On the topic of danger to the community, there can be no doubt that Mr. Anderson's alleged conduct on supervised release, which is the basis of the instant

Complaint, is not a factor in his favor. He doesn't shy away from this, and he seeks to address it head-on. In this regard, and taking into account the aforementioned offers of proof, the issue at hand is not about determining whether Mr. Anderson is objectively dangerous. Rather, it revolves around whether the Court can establish release conditions that alleviate the concerns expressed by Pretrial Services and the Government. Fortunately, it is indeed possible to do so.

One approach is for the Court to impose stringent restrictions on Mr. Anderson's interaction with the outside world, particularly regarding his access to the internet. This can be achieved by implementing controls on his usage of computers, iPads, smartphones, and similar devices. Honestly, the Court very likely has the authority to order that such devices not be used at all, save for discussions with, for example, defense counsel and staff, medical providers and in aid of religious observances. The Court can also order home confinement and electronic monitoring. However, let it no go unsaid that, to the extent that Pretrial Services mentions, at p. 7 of its report, the "instant allegations (financial danger)," that's concerning because it seems to encourage the view that the Court evaluate one of the least important factors: weight of the evidence.

Regarding flight, there is no evidence presented at all that Mr. Anderson has sought to flee or has indicated that he would do as much. Indeed, he has no passport nor does he have any travel history. *See Santos-Flores*, *supra*, at 1090-91 (holding that flight risk must involve some "element of volition"); *see also Gov't of Virgin Islands v. Leycock*, 678 F.2d 467, 469 (3d Cir. 1982) ("If the opportunity for flight were a reason to deny bail, virtually any defendant living in an area served by interstate public transportation could be denied bail for that reason.")

Although it is true that Mr. Anderson acknowledges his past criminal history and misconduct while on Supervised Release, there is more to be considered about him. As Your Honor may gather, his daughter, Megan Anderson, has taken on a pivotal role in assisting her father in seeking bail. Her attached declaration carries a genuine tone. Within it, she shares various personal anecdotes that depict a father who, despite his criminal

history, is striving to be there for his children to the best of his ability. Her declaration indicates:

1. Mr. Anderson's ("Mark") youngest son, Grayson, is a sophomore at Beverly Hills High School and currently lives with him. Previously, they lived together in The Valley with Grayson's mom and her family. Mark and Grayson bond over their shared passion for tennis, playing matches at the community courts and at Roxbury Park. They also shoot hoops together at the community park near their home and enjoy watching games with friends and family. Working out together is another activity they both enjoy, strengthening their bond through their love for being active. Mark is a playful and supportive father to Grayson, and their relationship has grown significantly in the past five years as Grayson enters adulthood. Their time together is cherished, and they are trying to make up for the lost time they experienced.

2. Mark's 19-year-old son, London, is studying at UC San Diego, focusing on his musical talents inherited from his father. Mark is a dedicated supporter of London, attending his performances in Los Angeles and collaborating with him in the studio during his visits home. Mark even surprised his family by having custom T-shirts made for one of London's performances through a family friend. Mark himself is a gifted musician, playing the guitar, piano, and saxophone. He regularly records music with both London and Grayson. In the evenings, Mark can be heard playing the guitar in the living room, bringing joy to the entire family. They have even recorded Christmas albums together, with each family member contributing their own original tune or covering a classic while Mark plays the guitar.

3. Mark also enjoys cooking for his children, preparing large amounts of Italian food. The family gathers around the table, engaging in conversations, telling jokes, and participating in trivia quizzes led by Mark. He maintains a close relationship with London and Grayson's mom's family, attending their family dinners and gatherings. They frequently exchange leftovers and have a loving and supportive co-parenting relationship with the boys.

4. Additionally, Mark is proud and supportive of his three eldest children, Megan, Elizabeth, and Thomas, who live in different parts of the country. Megan is a designer in Austin, Texas, Elizabeth works in public relations in Washington, D.C., and Thomas is an engineer in Detroit. Despite living apart, they maintain a close relationship with Mark through family group chats, sharing videos and messages, and coming together for holidays and visits.

5. The family has faced challenges due to Mark's lengthy periods of incarceration. It has been tough for the children to have him coming in and out of their lives repeatedly. However, they love his spirit and energy, and cherish the opportunity to spend time with him doing ordinary things. During his time in prison, the children grew apart, but since his release, they have been able to reunite as a family.

## IV
## CONCLUSION

Based on the information provided, Defendant Mark Roy Anderson respectfully requests to be released on his own recognizance. Alternatively, if that is not possible, he requests to be released with appropriate conditions as deemed fair and just by the Court.

Respectfully submitted,

Dated: May 16, 2023

818 Law Group, LLP
/s/ Brett A. Greenfield
21031 Ventura Blvd,
Suite 1101
Woodland Hills, CA. 91364
(818) 724-7272 (voice)
(818) 806-4110 (facsimile)
Brett@818LawGroup.com

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 21031 Ventura Boulevard, Suite 1101, Woodland Hills, California 91364.

On May 16, 2023, I served the foregoing document described as: **Defendant Mark Anderson's Response to Government's Detention Request** on said parties in this action as follows:

## SEE ATTACHED SERVICE LIST

**BY MAIL:** I am familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☑ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on May 16, 2023, at Los Angeles, California.

*J. Brantveyn* [E-Signature]

_____
Julie Brantveyn

# **ATTACHED SERVICE LIST**

**Kerry L. Quinn** | **Assistant United States Attorney**
Major Frauds Section
United States Attorney's Office, Central District of California
1100 U.S. Courthouse
312 N. Spring Street,
Los Angeles, CA 90012
(213) 894-5423 (office)
Kerry.L.Quinn@usdoj.gov (email)